UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
OCT 2 5 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-629-GWU

ORVILLE A. GOSSETT,            PLAINTIFF,

VS.         **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,        DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Gossett

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Gossett

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

> pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Gossett

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Orville A. Gossett, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a history of peripheral vascular disease (small vessel disease, status post AVE stent placement), mild degenerative changes of the lumbosacral spine, hypertension (controlled with medication), and a history of a benign fibrous right hip lesion (status post excision and biopsy). (Tr. 27). Nevertheless, basing his findings on the conclusions of state agency reviewing physicians, the ALJ determined that the plaintiff retained the residual functional capacity to perform "medium" level exertion, with no climbing of ladders, ropes, and scaffolds, no more than occasional kneeling, crawling, climbing of ramps or stairs, or pushing and pulling with the lower extremities, and a need to avoid concentrated exposure to extreme cold and vibration. (Tr. 31). The ALJ found that a person with these restrictions could return to the plaintiff's past relevant work as a car salesman. (Tr. 31).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff objects to the ALJ's refusal to accept the opinion of Dr. Richard Lingreen, his treating neurosurgeon, who opined in July, 2003, that Mr. Gossett would be restricted to lifting less than 10 pounds, working no more than one hour an

7

eight-hour day, with no standing and walking, as well as "never/rarely" bending, squatting, crawling, climbing, reaching, stooping, crouching, kneeling, rotating or flexing his knack, working around unprotected heights, moving machinery, or operating automotive equipment. (Tr. 402-3). He was also unable to use his hands to grasp, push, pull, or perform fine manipulation, or use his feet for repetitive movements as it operating for controls. (Tr. 403). The reasons given for these restrictions were diagnoses of lumbago, lumbar sprain/strain, lumbar nerve root injury, lumbar radiculopathy, and muscle sprain, evidenced by a reduced range of motion, painful motion, muscle spasm, muscle weakness, positive straight leg raising test, and tenderness. (Tr. 401).

The ALJ rejected Dr. Lingreen's opinion in favor of a previous opinion by a non-examining state agency physician, Dr. Kenneth S. Phillips, given in April, 2003 (Tr. 31, 440-6). While the opinion of a non-examining source may be accepted over that an examiner, the examiner must have had access to all the evidence and clearly stated the reasons for his difference of opinion. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). Moreover, the Court finds the other factors cited by the ALJ in discounting the treating physician's opinion unpersuasive.

The ALJ cited several factors in discounting the opinion of treating physician Lingreen, including a subsequent office note dated December 17, 2003 at which Dr. Lingreen noted that there had been no changes in the plaintiff's condition, but Mr. Gossett had "politely declined further diagnostics or therapeutics," and the physician

stated that he would "at some point in the near future need to obtain an MRI of his lumbar spine for further diagnostics" (Tr. 404). The ALJ stated that, "[w]hen considered in tandem with the treatment recommendations of neurosurgeons Doctors Ghosh and El-Kalliny and with Dr. Lynd's failure to prescribe any further narcotic medications," this note "belie[s] the restricted assessment issued in July 2003." (Tr. 31). All three physicians were neurosurgeons. Dr. Magdi El-Kalliny had examined the patient on one occasion in June, 2001, and found only mild tenderness on examination and no evidence of disc herniation or nerve root compression on an MRI (Tr. 358-60);[1] however, this was more than two years before Dr. Lingreen issued his opinion, and well before the plaintiff's alleged onset date of January 15, 2002 (Tr. 19, 76). Dr. Subrata Ghosh also examined the plaintiff on one occasion, January 18, 2002, three days after his alleged onset date. (Tr. 329-30). His examination was essentially normal, and the doctor simply concluded that the plaintiff did not need surgical intervention and should be referred to physical therapy; no comment was made on specific functional restrictions. Dr. Howard Lynd, a specialist in pain management, treated the plaintiff on several occasions in 2002 for lower back pain, and provided a series of injections, after noting that the plaintiff was in "moderate distress" from low back pain, had limited range of motion in flexion and

---

[1] He did recommend that the plaintiff "avoid any excessive twisting, lifting, or bending," (Tr. 358), and no restriction on "twisting" was included in the ALJ's functional capacity finding.

9

Gossett

extension, and positive straight leg raising on the right side (Tr. 217). He also prescribed Methadone, and later, OxyContin. (Tr. 215, 218). The plaintiff reported that the injections were only moderately helpful. By October 31, 2002, Dr. Lynd opined that it was "quite a mystery in this patient why he has back pain" in view of a negative MRI and EMG, and planned to take his patient off OxyContin, although he was willing to prescribe other pain medications such as Ultram.[2] (Tr. 460). At this point, Mr. Gossett switched treatment to Dr. Lingreen, who continued to prescribe narcotics. (Tr. 409). Dr. Lynd had not listed functional restrictions.

Since Dr. Ghosh and Dr. Lynd did not list any functional restrictions, the ALJ's citation of their opinions, and the December, 2003 office note of Dr. Lingreen, to overcome the restrictions given by treating physician Lingreen is presumably based on the implication that the plaintiff did not have significant objective back problems. However, following December, 2003, Dr. Lingreen continued to treat Mr. Gossett and to prescribe narcotic medications (as well as a muscle relaxer). (Tr. 461-2).[3]

---

[2] Ultram is an analgesic used for treatment of moderate to moderately severe pain. Physician's Desk Reference (57th Ed.) at p. 2511.

[3] In June, Dr. Lingreen also ordered a "pain patient profile" which was reportedly designed to "identify pain patients who are experiencing emotional distress that may be affecting their symptoms." (Tr. 465). The profile "suggested" that neither depression or anxiety was a significant problem for the patient, and that his "somatization scale suggests that you are about as concerned about pain and health problems as the average pain patient is" and it was "normal and to be expected" that "you may feel that too much of your life is controlled by your pain and physical problems." (Tr. 468). Therefore, the Court does not agree with the implication of the ALJ that this report suggested that the plaintiff did not have a problem with pain; rather, it suggests that it

10

Essentially, the ALJ was replacing the professional opinion of Dr. Lingreen with a layman's opinion. Under the circumstances, and following Barker, he should have obtained an opinion from a medical expert with access to all the evidence if the treating physician's opinion was to be discarded.

A remand for further consideration of this issue will be required, and any other new evidence the plaintiff may wish to submit, including records submitted to the Appeals Council. (E.g., Tr. 470-84). A brief discussion of other issues raised by the plaintiff is in order, however.

Mr. Gossett raises an issue regarding his diagnosis of peripheral vascular disease, which the ALJ found did not meet or equal the Commissioner's Listing of Impairment (LOI) 4.12. (Tr. 27). LOI 4.12 requires, in relevant part, that a patient show "intermittent claudication with marked impairment of peripheral arterial circulation as determined by Doppler studies showing: (1) resting ankle/brachial systolic blood pressure ratio of less than 0.50; or (2) decrease in systolic blood pressure at the ankle on exercise . . . of 50 percent or more of pre-exercise level at the ankle, and requiring 10 minutes or more to return to pre-exercise level." 20 C.F.R. Pt. 404, Subpt P, App. 1.

While Mr. Gossett's treating family physician wrote that he had significant peripheral vascular disease and significant pain in the lower extremities (Tr. 268),

---

was not causing significant emotional distress.

11

Gossett

and was found by physicians at the Lexington Clinic to have a hemodynamically significant right lower extremity inflow obstructive disease (Tr. 318-19) and he eventually had a stent placement for "left common iliac artery stenosis" in May, 2002 (Tr. 205), his ankle/brachial index did not meet the Listing in an April, 2002 Doppler study (Tr. 318-19). A January, 2003 Doppler study report by Dr. Martin Fritzhand showed that the plaintiff had no posterior tibial or dorsalis pedis pulses in either the right or left leg, which gave an ankle/brachial index of 0.00. (Tr. 397). However, the plaintiff was subsequently examined by Dr. M. S. Akaydin on February 26, 2003, who determined an index of 1.30. (Tr. 400). Mr. Gossett maintains on appeal that the ALJ did not take note of his hearing testimony that he did not believe Dr. Akaydin had actually obtained a valid signal on the Doppler study. (Tr. 505). However, the ALJ noted the physician's statement that it required several attempts to establish a Doppler value. (Tr. 399). While the plaintiff may not believe that a valid signal was obtained, there is sufficient evidence for the ALJ to have found that it was established.

Finally, the plaintiff argues that the ALJ committed error in failing to find that he had a "severe" mental impairment, particularly citing the conclusion of Dr. Kenneth Starkey, a consultative psychological examiner, that he could be rendered psychologically appropriate for returning to full-time work in approximately three months with formal psychological care including weekly counseling. (Tr. 391). However, there were other significant factors that mitigated against this conclusion

Gossett

by Dr. Starkey, including Dr. Starkey's indication that the plaintiff's limitations were based partially on "general medical conditions" (Tr. 391), a factor outside his area of expertise, his finding of a Global Assessment of Functioning (GAF) score of 65 (Id.), which suggests only "slight" impairment per the <u>Diagnostic and Statistical Manual of Mental Disorders</u> (Fourth Edition-Text Revision), p. 34, the aforementioned pain patient profile, and the plaintiff's hearing testimony that he was not asserting the existence of a mental health problem (Tr. 501).

The plaintiff also argues that the limitation on exposure to extreme cold is inconsistent with the occupation of a car salesman, who would have to be outside in all kinds of weather. Section 273.353-010 of the Dictionary of Occupational Titles, captioned "Salesperson, automobiles," states that exposure to extreme cold is not present in this occupation as it is generally performed in the economy, however.

The decision will be remanded for further consideration

This the ___25___ day of October, 2006.

G. WIX UNTHANK
SENIOR JUDGE

13